# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KATHY BRAWNER, | |
| Plaintiff, | |
| v. | Civil Action File No.: |
| CITY OF ATLANTA, | _____ |
| Defendants. | **JURY TRIAL REQUESTED** |

## COMPLAINT

COMES NOW, Plaintiff Kathy Brawner ("Plaintiff" or "Brawner"), by and through her undersigned counsel, hereby files this Complaint against Defendant City of Atlanta, ("Defendant"), showing the Court as follows:

## JURISDICTION AND VENUE

1.

This is an action for: (1) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. ("Title VII"); (2) discrimination based on race in violation of 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1981 ("Section 1981"); and (3) retaliation for engaging in conduct protected under Title VII, Section 1983, as well as Section 1981.

2.

The jurisdiction of this Court is invoked pursuant to Title VII, 42 U.S.C. § 1983, 29 U.S.C. § 2611, 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3.

The unlawful employment practices alleged in this Complaint were committed within the Northern District of Georgia.  Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as every act of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

4.

The conduct of the Defendants, which gave rise to Plaintiff's complaint, was done under the color of state and local law.

5.

All of Defendant's discriminatory and retaliatory conduct described herein was accomplished pursuant to unofficial policy, practice and custom of the City of Atlanta.

**PARTIES**

6.

Plaintiff, a white female, was at all times relevant to this action a citizen of the United States entitled to bring an action of this type and nature. She resides in the State of Georgia.

7.

The City of Atlanta is subject to the jurisdiction of this Court. The City of Atlanta may be served with process by serving the City of Atlanta Department of Law at 68 Mitchell Street, Suite 4100, Atlanta, Georgia 30303.

8.

Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

9.

Defendant City of Atlanta is an "employer" within the meaning of 42 U.S.C. § 2000e(b). Defendant City of Atlanta has more than five hundred (500) employees.

10.

Defendant engaged in all of the conduct described herein under color of state and local law.

11.

Defendant's conduct described herein was accomplished pursuant to the unofficial policy and custom of the City of Atlanta, and was committed or authorized by officials whose acts can be fairly deemed to be actions of the City of

Atlanta. Specifically, the Atlanta Department of Corrections has a policy or custom of discriminatory practices against white employees.

## ADMINISTRAIVE PROCEDURES

12.

Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2015.

13.

The EEOC issued a "Notice of Right to Sue" on July 28, 2016, entitling an action to be commenced within ninety (90) days of receipt of that notice.

14.

Plaintiff has brought suit within ninety (90) days of receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

15.

Plaintiff began her employment with the City of Atlanta Department of Correction on February 4, 2013 as the Director of Nursing. Plaintiff's primary responsibilities were to supervise and manage the overall medical staff and enforce the Defendant's policies and procedures. Specifically, Plaintiff was tasked with supervising and managing: the nursing staff; medical records department; medical

technicians; medical administrative staff and overseeing the contracts for physicians, dentists and dental hygienist.

16.

Plaintiff did not receive any formal training during her employment with the Defendant.

17.

At the beginning of Plaintiff's employment, she was advised that the medial staff would continue to report to Chief Diane Jones ("Chief Jones"), a black employee of Defendant and direct supervisor of Plaintiff, as they had done prior to Plaintiff commencing employment with Defendant. Plaintiff was advised that this would facilitate her transition into her new role as Director of Nursing.

18.

Unfortunately, Chief Jones continued to direct the staff to bring all concerns to her office, rather than the Plaintiff, long after Plaintiff settled into her role as Director of Nursing. As a result, Chief Jones and other staff members undermined Plaintiff's authority and made it impossible for Plaintiff to perform the tasks required of her. Chief Jones did not interfere and/or undermine the authority of other black employees of Defendant.

19.

For the first couple of years of employment, Plaintiff's main issue with Defendant centered around Chief Jones' interference with her ability to supervise her subordinates. However, over time, the interference escalated.

20.

In March 2015, Plaintiff was nominated for a position on the American Correctional Committee ("ACA"). In the prior years, Defendant sent several other black employees to the ACA conference and covered most of their expenses, including travel and lodging.

21.

When Plaintiff informed Chief Patrick Labat ("Chief Labat"), the head of the Department of Corrections, of her nomination, she was informed that the department would not cover any expenses if she accepted the nomination. Plaintiff was forced to turn down the nomination based on Chief Labat's decision to not cover her expenses.

22.

Chief Labat's action were completely inconsistent with the department's past behavior. Prior to Plaintiff's nomination, Chief Labat expressed his desire to have the department represented on ACA committees and boards.

23.

Over the next several months, Chief Labat and Chief Jones continued to engage in discriminatory activities against the Plaintiff.

24.

By way of example, Plaintiff was required to keep track of and budget the medical staff hours. The staff's hours are recorded in Kronos. Despite multiple requests, Plaintiff was never given access to Kronos, but was expected to account for all overtime hours and discipline subordinates for tardiness and unexcused absences. All other black employees in the department tasked with these responsibilities were provided access to Kronos.

25.

When Plaintiff attempted to discipline an employee, Vera Kelly ("Kelly"), for not clocking in when scheduled and leaving at a time other than her scheduled shift, Plaintiff's decision to discipline Kelly was undermined by Chief Jones and Chief Labat.

26.

After Plaintiff sought to discipline Kelly, Plaintiff was called into a meeting with Chief Jones and Chief Labat. During the meeting, Plaintiff was informed that she could not discipline Kelly. Plaintiff was further informed that she would be fired before Kelly.

27.

Similarly, Chief Jones hire, promoted and transferred staff members under Plaintiff's command without involving Plaintiff in the process. In fact, on many instances, Chief Jones failed to inform Plaintiff of the staff changes. Even though Plaintiff was not involved in these processes, she was often held responsible for benchmarks that these employees failed to meet. Other black employees were afforded the opportunity to be involved in the screening, interviewing, hiring, promotion and transfer process of their subordinates.

28.

Pamela Banks ("Banks") witnessed the treatment Plaintiff experience and filed an EEO claim alleging race discrimination on Plaintiff's behalf on October 5, 2015.

29.

Plaintiff was notified by email on October 6, 2015 of the claim filed on her behalf. Plaintiff was further informed to meet with a member of the Human Resources Department at City Hall regarding the claim. At the meeting, Plaintiff learned that Investigator Latya Felicano ("Felicano") was assigned to her claim.

30.

Felicano took Plaintiff's statement and information and advised Plaintiff to follow up with any additional information relevant to the claim.

31.

On November 6, 2015, Plaintiff contacted Felicano to provide further information regarding the treatment she was experiencing at work. There was no further communication regarding the claim until December 3, 2015.

32.

On December 3, 2015, Plaintiff met with Felicano, Chief Jones and Chief Labat at City Hall. Plaintiff was informed that they were closing out the investigation of her claim and that she would receive a final letter within seven days of the meeting stating the reason for the dismissal. Plaintiff never received a letter.

33.

During the meeting, Chief Labat expressed that he was upset with the Plaintiff and could no longer trust her because of Plaintiff's EEO claim.

34.

Plaintiff returned to work and continued to experience the discriminatory treatment described herein.

35.

Plaintiff was a director in title only. Plaintiff was not allowed to hire, promote and/or discipline her subordinates. Plaintiff was not provided access to software programs necessary to perform essential tasks of her job. Furthermore, Plaintiff's decision were often overturned by Chief Jones without consulting her.

36.

Plaintiff was reprimanded for minor infractions by Chief Jones. By way of example, Plaintiff was often provided last minute notice of meeting and reprimanded if she could not attend. Other black employees of Defendant were provided sufficient notice of meetings where their attendance was required.

37.

During Plaintiff's employment with Defendant, Defendant passed all audits. In fact, Plaintiff passed an audit for a national accreditation regarding Defendant's maintenance of its medical charts. This was the first time Defendant passed the national accreditation audit.

38.

Despite the discriminatory obstacles she faced, Plaintiff continued to work and perform the tasks required of her, except for those where Defendant deliberately interfered with Plaintiff's ability to perform a task.

39.

Unfortunately, on June 10, 2016 Plaintiff was informed by Chief Labat that her services were no longer needed. Chief Labat cited "the department going in a different direction" as the reason for the termination.

40.

Due to Defendant's conduct, Plaintiff has suffered emotional pain and suffering, mental anguish, humiliation and damage to her reputation.

41.

All of Defendant's unlawful actions were willful, malicious, deliberate and undertaken with the specific intent to harm Plaintiff and/or violate her federally protected rights. Additionally or in the alternative, Defendant acted with reckless disregard toward Plaintiff and her federally protected rights.

## COUNT ONE
## RACE DISRIMINATION IN VIOLATION OF TITLE VII

42.

Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43.

The employment relationship between Plaintiff and Defendants gives rise to a cause of action where race discrimination is alleged to be the causative agent of an adverse action within the scope of the employment relationship. Defendant is a governmental entity subject to the Fourteenth Amendment to the US Constitution (hereinafter "Fourteenth Amendment"), as applied through 42 U.S.C. § 1983, and is a "person" as defined by relevant case law interpreting 42 U.S.C. § 1983.

44.

Defendant's race discrimination against Plaintiff violated the Equal Protection Clause of the Fourteenth Amendment, by treating Plaintiff, one of only four white employees in her department and causing her to be treated less favorably than Defendant's black employees.  Specifically, Plaintiff was stripped of her ability to perform the tasks required of her by Chief Jones and Chief Labat, when they repeatedly undermined her decisions and failed to provide her access to software required for her responsibilities. Plaintiff is thus entitled to all appropriate relief provided under 42 U.S.C. § 1983.

45.

Defendant implemented policies and customs that discriminated on the basis of race, and violated Plaintiff's rights under the Fourteenth Amendment, enforced via 42 U.S.C. § 1983.  For example, Defendants' exercised policies allowing only black employees access to the software necessary to perform their job tasks and failed to extend the same to access to white employees.

46.

Chief Jones and Chief Labat, acting under color of law, used their authority over Plaintiff to carry out the illegal race discrimination against Plaintiff.

47.

Chief Jones, was at all relevant times the Assistant Chief and Plaintiff's direct supervisor, and used her position to implement and carry out a custom,

policy and procedure of discrimination based on race, which violated Plaintiff's rights under Title VII.

48.

Chief Labat, was at all relevant times the Chief and head of the Department of Corrections, and used his position to implement and carry out a custom, policy and procedure of discrimination based on race, which violated Plaintiff's rights under Title VII.

49.

Chief Jones and Chief Labat actions were willful, wanton and intentionally directed to harm Plaintiff.

50.

Chief Jones and Chief Labat's actions were reckless and were taken in willful disregard of the probable consequences of their actions.

51.

As a direct and proximate result of Chief Jones and Chief Labat's intentional and unlawful actions, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to her reputation, and other past and future pecuniary losses.

**COUNT TWO**
**RETALIATION IN VIOLATON OF TITLE VII AND SECTION 1981**

52.

Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53.

On October 5, 2016, an EEOC claim alleging discrimination based on race was filed on Plaintiff's behalf.

54.

After the claim was dismissed, Chief Labat openly expressed to Plaintiff that he was upset and that he could no longer trust Plaintiff based on the fact that an EEOC claim had been filed on her behalf.

55.

Defendant's actions were retaliatory and in violation of Title VII, 42 U.S.C. § 2000e et seq. and Section 1981, thus entitling Plaintiff to all appropriate relief provided under the statute. Defendant's liability under Section 1981 is asserted through Section 1983.

56.

As a direct and proximate result of Defendant's unlawful discriminatory conduct, committed in derogation of her federally protected rights, Plaintiff has suffered lost wages and benefits of employment and other monetary damages in an amount to be determined at trial.

57.

Furthermore, as a direct and proximate result of Defendant's intentional and unlawful conduct, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of sleep, embarrassment, damage to her reputation, and other past and future pecuniary losses.

### COUNT THREE
### PUNITIVE DAMAGES

58.

Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 57 as if fully set forth herein.

59.

Defendant's actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression, and complete want of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish and penalize Defendant for and from such conduct in the future.

### COUNT FOUR
### ATTORNEYS FEES

60.

Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61.

Plaintiff is entitled to an award of attorney's fees and expenses of litigation on each and every cause of action alleged herein, as provided by statute and because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for:

1) General damages based on Defendant's conduct as alleged herein in an amount to be determined at trial;

2) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

3) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon in an amount to be determined at trial;

4) Reasonable attorney's fees and expenses of litigation;

5) Trial by jury as to all issues;

6) Prejudgment interest at the rate allowed by law;

7) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights; and

8) All other relief to which Plaintiff may be entitled.

Submitted this 12th day of October, 2016.

s/ Regina S. Molden
Regina S. Molden
Georgia Bar No. 515454
A. Zakiya Watson-Caffe
Georgia Bar No. 441773
Molden Law Firm, LLC
Peachtree Center – Harris Tower
233 Peachtree Street
Suite 1245
Atlanta, Georgia 30303
Telephone: (404) 324-4500
Facsimile: (404) 324-4501
Email: rmolden@moldenlaw.com
Email:  zwatson@moldenlaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that Plaintiff's Complaint complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the Northern District of Georgia. Counsel hereby states that Plaintiff's Complaint for Damages has been types in Times New Roman 14 font.

Respectfully submitted this 12th day of October 2016.

s/ Regina S. Molden
Regina S. Molden
Georgia Bar No. 515454